UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MELISSA BARRON, DAVID BERNSTEIN, RON BLAU, TENISHA BURGOS, KENT BUSEK, JENNIFER CHASE, NATHAN CROOM, LORI CURTIS, JESSICA DECASTRO, ALENA FARRELL, JANE FITZGERALD, JASON GRALA, IAN GROVES, CURTIS GUNNERSON, PAUL GUSTAFSON, TOM HALVERSON, MELINDA HARR DDS PC, JOHN HOLLINGSWORTH, CAROL ANN KASHISHIAN, ROBERT KLINGER, KELLY KLOSTERMAN, SUSAN LACAVA, JAMES MAREAN, ELLIS WINTON MCINNIS, NILSA MERCADO, REBECCA LYNN MORROW, EDWARD MUSCARA, STACEY NICKELL, SOPHIE O'KEEFE-ZELMAN, ROGER OLSON, SUSAN OLSON, WILLIAM PICOTTE, JESSE POWELL, LAUREN PRIMOS, CINDY PRINCE, VIRGINIA PUERINGER JANNE RICE, ROBERT RICE, JR., FRANCES GAMMELL-ROACH, DARREL SENIOR, MEETESH SHAH, DARCY SHERMAN, ERICA SHOAF, RICHARD STOEHR, ARTHUR STUKEY, KATHLEEN TAWNEY, JANE TAYLOR, MICHAEL TRACY, KEITH UEHARA, MICHAEL WICK, THOMAS WILSON, PHILLIP YOUNG, on Behalf of Themselves and all Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. <br><br> CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF <br><br> JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| KOITO MANUFACTURING CO., LTD., ICHIKOH INDUSTRIES, LTD., STANLEY ELECTRIC CO., LTD., and MITSUBA CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs Melissa Barron,  David Bernstein, Ron Blau, Tenisha Burgos, Kent Busek, Jennifer Chase, Nathan Croom, Lori Curtis, Jessica Decastro, Alena Farrell, Jane Fitzgerald, Jason Grala, Ian Groves, Curtis Gunnerson, Paul Gustafson, Tom Halverson, Melinda Harr DDS PC, John Hollingsworth, Carol Ann Kashishian, Robert Klinger, Kelly Klosterman, Susan LaCava, James Marean, Ellis Winton McInnis, Nilsa Mercado, Rebecca Lynn Morrow, Edward Muscara, Stacey Nickell, Sophie O'Keefe-Zelman, Roger Olson, Susan Olson, William Picotte, Jesse Powell, Lauren Primos, Cindy Prince, Virginia Pueringer, Janne Rice, Robert Rice, Jr., Frances Gammell-Roach, Darrel Senior, Meetesh Shah, Darcy Sherman, Erica Shoaf, Richard Stoehr, Arthur Stukey, Kathleen Tawney, Jane Taylor, Keith Uehara, Michael Tracy, Michael Wick, Thomas Wilson and Phillip Young ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment, allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Koito Manufacturing Co., Ltd., Ichikoh Industries, Ltd., Stanley Electric Co., Ltd. and Mitsuba Corporation (all as defined below, and collectively "Defendants"), for engaging in an over decade-long conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market of Automotive Lamps (defined below).

2.      Plaintiffs seek to represent all persons and entities who, during the period from and including July 1, 2002 through such time as the anticompetitive effects of Defendants'

1

conduct ceased (the "Class Period"), purchased or leased a new vehicle in the United States for personal use and not for resale which included one or more Automotive Lamp(s) as a component part, or indirectly purchased one or more Automotive Lamp(s) as a replacement part, which were manufactured or sold by any Defendant, any current or former subsidiary of a Defendant or any co-conspirator of a Defendant.

3.      "Automotive Lamps", as used herein, include headlamps and rear combination lamps installed by automobile original equipment manufacturers ("OEMs").  A headlamp is an Automotive Lamp installed in the front of an automobile, which consists of lights such as headlights, a clearance lamp and turn signals.  A rear combination lamp is an Automotive Lamp installed in the rear of an automobile, which consists of lights such as a backup lamp, stop lamp, tail lights and turn signals.

4.      Defendants manufacture, market, and sell Automotive Lamps throughout and into the United States.  Defendants and other co-conspirators (as yet unknown) agreed, combined and conspired to fix, raise, maintain and/or stabilize prices, and allocate market shares for Automotive Lamps.

5.      Competition authorities in Japan and possibly elsewhere, have been investigating a conspiracy in the market for Automotive Lamps since at least March 2012.  The Japanese Fair Trade Commission ("JFTC") has raided the offices of Defendants.  The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry.  As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the

2

offices of a number of major competitors in the automotive parts industry.  The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

6.      On March 21, 2013, the JFTC announced that it had levied fines totaling $49.1 million, including a $36 million fine against Defendant Koito Manufacturing Co., Ltd. ("Koito") and a $13.1 million fine against Defendant Ichikoh Industries, Ltd. ("Ichikoh"), for violating antitrust laws by forming a cartel to fix prices for Automotive Lamps.   On March 21, 2013 the JFTC also announced the imposition of cease-and-desist orders against Defendants Koito and Ichikoh, requiring them to (i) immediately pass resolutions that they would terminate any illegal conduct in the Automotive Lamps industry, (ii) contact any automobile maker who may have purchased their Automotive Lamps through collusive bidding processes, (iii) refrain from engaging in such illegal conduct in the future, and (iv) implement employee antitrust compliance programs.  According to the JFTC, fellow conspirator Stanley Electric Co., Ltd. ("Stanley") also violated antitrust laws, but did not receive a cease-and-desist order.

7.      Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Automotive Lamps sold to automobile manufacturers and others in the United States.  The combination and conspiracy engaged in by

the Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign

trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state antitrust,

unfair competition, and consumer protection laws and the common law of unjust enrichment.

8.     As a direct result of the anti-competitive and unlawful conduct alleged herein,

Plaintiffs and the Classes (as defined below) paid artificially inflated prices for Automotive

Lamps during the Class Period and have thereby suffered antitrust injury to their business or

property.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to

secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman

Act (15 U.S.C. § 1).   Plaintiffs also assert claims for actual and exemplary damages pursuant to

state antitrust, unfair competition, and consumer protection laws, and the common law of unjust

enrichment, and seek to obtain restitution, recover damages and secure other relief against

Defendants for violations of those state laws.  Plaintiffs and the Classes also seek attorneys' fees,

costs, and other expenses under federal and state law.

10.     This Court has jurisdiction over the subject matter of this action pursuant to

Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1),

and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter

jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is

a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of

interests and costs, and in which some members of the proposed Classes are citizens of a state

different from at least one of the Defendants; and (ii) Plaintiffs' state law claims form part of the

same case or controversy as their federal claims under Article III of the United States Constitution.

11.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

12.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Automotive Lamps throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

13.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

14. The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

15. Automotive Lamps manufactured abroad by Defendants and sold for use in automobiles in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Automotive Lamps are purchased in the United States, and such Automotive Lamps do not constitute import commerce, the Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

16. By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Automotive Lamps, which conspiracy unreasonably restrained trade and adversely affected the market for Automotive Lamps.

17. The Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Automotive Lamps for personal use and not for resale, including Plaintiffs and members of the Classes.

## PARTIES

### Plaintiffs

18.     Plaintiff Melissa Barron is an Oakland, California resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

19.     Plaintiff David Bernstein is a Minnetonka, Minnesota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

20.     Plaintiff Ron Blau is a Newton Highland, Massachusetts resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

21.     Plaintiff Tenisha Burgos is a Bronx, New York resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

22.     Plaintiff Kent Busek is a North Dakota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

23.     Plaintiff Jennifer Chase is a Waterloo, Iowa resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

24.     Plaintiff Nathan Croom is an Omaha, Nebraska resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

25.     Plaintiff Lori Curtis is a St. Louis, Missouri resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

26.     Plaintiff Jessica DeCastro is a St. Louis, Missouri resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

27.     Plaintiff Alena Farrell is a South Burlington, Vermont resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

28.     Plaintiff Jane Fitzgerald is a Milton, Vermont resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

29.     Plaintiff Jason Grala is a Holbrook, New York resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

30.     Plaintiff Ian Groves is an Albuquerque, New Mexico resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

31.     Plaintiff Curtis Gunnerson is a South Haven, Minnesota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

32.     Plaintiff Paul Gustafson is a Milwaukie, Oregon resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

33.     Plaintiff Tom Halverson is an Arizona resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

34.     Plaintiff Melinda Harr DDS PC, a corporation with its principal offices in Fargo, North Dakota, purchased at least one Automotive Lamp indirectly from one or more Defendants.

35.     Plaintiff John Hollingsworth is a Saratoga, California resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

36.     Plaintiff Carol Ann Kashishian is a Milwaukee, Wisconsin who purchased at least one Automotive Lamp indirectly from one or more Defendants.

37.     Plaintiff Robert Klinger is a Manchester, Missouri resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

38.     Plaintiff Kelly Klosterman is a Mooreton, North Dakota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

39.     Plaintiff Susan LaCava is a Madison, Wisconsin resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

40.     Plaintiff James Marean is a Westbrook, Maine resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

41.     Plaintiff Ellis Winton McInnis is a Flowood, Mississippi resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

42.     Plaintiff Nilsa Mercado is a Waterford, Michigan resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

43.     Plaintiff Rebecca Lynn Morrow is a Glendale, Arizona resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

44.     Plaintiff Edward Muscara is a Manchester, New Hampshire resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

45.     Plaintiff Stacey Nickell is a Beckley, West Virginia resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

46.     Plaintiff Sophie O'Keefe-Zelman is a Phoenix, Arizona resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

47.     Plaintiff Roger Olson is a South Haven, Michigan resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

48.     Plaintiff Susan Olson is a South Haven, Michigan resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

49.     Plaintiff William Picotte is a former South Dakota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

50.     Plaintiff Jesse Powell is a Lehi, Utah resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

51.     Plaintiff Lauren Primos is a Flowood, Mississippi resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

52.     Plaintiff Cindy Prince is a Langlois, Oregon resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

53.     Plaintiff Virginia Pueringer is a Billings, Montana resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

54.     Plaintiff Janne Rice is a Kenova, West Virginia resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

55.     Plaintiff Robert Rice, Jr. is a Kenova, West Virginia resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

56.     Plaintiff Frances Gammell-Roach is a Warwick, Rhode Island resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

57.     Plaintiff Darrel Senior is a Lenexa, Kansas resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

58.     Plaintiff Meetesh Shah is a Daly City, California resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

59.     Plaintiff Darcy Sherman is a Minneapolis, Minnesota resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

60.     Plaintiff Erica Shoaf is a Phoenix, Arizona resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

61.     Plaintiff Richard Stoehr is a Henderson, Nevada resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

62.     Plaintiff Arthur Stukey is a Montpelier, Vermont resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

63.     Plaintiff Kathleen Tawney is a Charlotte, North Carolina resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

64.     Plaintiff Jane Taylor is a Kapaa, Hawaii resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

65.     Plaintiff Michael Tracy is a Pensacola, Florida resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

66.     Plaintiff Keith Uehara is a Waipahu, Hawaii resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

67.     Plaintiff Michael Wick is a Rio Rancho, New Mexico resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

68.     Plaintiff Thomas Wilson is a Tupelo, Mississippi resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

69.     Plaintiff Phillip Young is an Aqua, Tennessee resident who purchased at least one Automotive Lamp indirectly from one or more Defendants.

### **Defendants**

70.     Defendant Koito is a Japanese corporation with its principal place of business in Tokyo, Japan.  Koito – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Koito is the

number one supplier of automotive lighting systems in the world and holds a 26% share of the global market for such products.  Koito is the parent corporation of North American Lighting, Inc., the leading manufacturer of automotive lighting products in the United States.  In the United States, Koito supplies automotive lighting products to Toyota, Honda, Ford, BMW, Subaru, Mitsubishi, Nissan, Lexus, GM and Chrysler.  In 2011, Koito had net sales of $5.16 billion, including net sales in North America of $550 million.

71.     Defendant Ichikoh is a Japanese corporation with its principal place of business in Kanagawa-ken, Japan.  Ichikoh – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Ichikoh's main customers include Toyota, Subaru, Nissan and Honda.  In 2011, Ichikoh had net sales of $1.12 billion.

72.     Defendant Stanley is a Japanese corporation with its principal place of business in Tokyo, Japan.  Stanley – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Stanley's major customers include Honda and Toyota.  In 2011, Stanley had net sales of $2.98 billion, including net sales in North America of $396.4 million.

73.     Defendant Mitsuba Corporation ("Mitsuba") is a Japanese corporation with its principal place of business in Gunma, Japan.  Mitsuba – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the

Class Period.  In 2011, Mitsuba had net sales of $2.52 billion, including net sales of $542 million in the United States, Mexico and Brazil.

## AGENTS AND CO-CONSPIRATORS

74.     Each Defendant acted as the principal of or agent for other Defendants with respect to the acts, violations, and common course of conduct alleged.

75.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

76.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.     The Automotive Lamps Industry

77.     Automotive Lamps, as used herein, consist of headlamps and rear combination lamps.  Headlamps on vehicles are primarily responsible for illuminating the road ahead during periods of low visibility, without blinding oncoming traffic.  In addition, headlamps make a vehicle easily visible.  Rear combination lamps functionally integrate communication signals from rear lights to inform drivers behind the vehicle of the presence of the car; stop lamps indicate that the brake is activated, turn signal lamps give a flashing warning light on the side of

the vehicle toward the direction in which the car will be going, and backup lamps assure the safety of the rear side of the car and indicate that the vehicle is moving backwards.  *See* Figures 1, 2, 3 and 4.



HEADLAMP

Figure 1



REAR COMBINATION LAMP

Figure 2



Figure 3 (Headlamps)



Figure 4 (Rear Combination Lamps)

78.     Automotive Lamps are installed by OEMs in new cars as part of the automotive manufacturing process.  They are also installed by OEMs in cars to replace worn out, defective or damaged Automotive Lamps.

79.     For new cars, the OEMs—mostly large automotive manufacturers such as Nissan, Toyota, Fuji Heavy Industries (Subaru), Mitsubishi and Mazda—purchase Automotive Lamps directly from Defendants.  Automotive Lamps may also be purchased by component manufacturers who then supply such systems to OEMs.  These component manufacturers are also called "Tier 1 Manufacturers" in the industry.  Tier 1 Manufacturers supply Automotive Lamps directly to an OEM.

80.     When purchasing Automotive Lamps, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.  Japanese OEMs procure parts for U.S.-manufactured vehicles both in Japan and in the United States.  *See* Figure 5 below, taken from the JFTC website.



2 Overview of the bidding processes for headlamps and rear combination lamps ordered by automobile companies

| I Decision to hold bidding for headlamps and rear combination lamps |
| II Request of quotations for potential suppliers |
| III Receipt of quotations from the potential suppliers |
| IV Examination of the quotations |
| V Selection of a successful bidder |
| VI Finalization of the drawing / specification for mass production |
| VII Decision of price for mass production |
| VIII Order to the successful bidder (Start of mass production) |

Figure 5.

81.     Defendants and their co-conspirators supplied Automotive Lamps to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  Defendants and their co-conspirators manufactured Automotive Lamps (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in

17

Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

82.     Plaintiffs and members of the proposed Classes purchased Automotive Lamps indirectly from one or more of the Defendants.  By way of example, an owner of a vehicle may indirectly purchase an Automotive Lamp from Defendants as part of purchasing or leasing a new vehicle.   An owner of a vehicle may also indirectly purchase a replacement Automotive Lamp from Defendants when repairing a damaged vehicle or where the vehicle's Automotive Lamp is defective.

83.     In 2012, the U.S. market for automotive lighting is estimated to be $4.4 billion. More than 90% of automotive lighting is related to exterior lighting and the headlamp market alone accounts for more than 70% of total automotive lighting.

**B.     The Structure and Characteristics of the Automotive Lamps Market Render the Conspiracy More Plausible**

84.     The structure and other characteristics of the Automotive Lamps market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market.  Specifically, the Automotive Lamps market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is rife with opportunities to conspire.

**1.     The Automotive Lamps Market Has High Barriers to Entry**

85.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

86.     There are substantial barriers that preclude, reduce, or make more difficult entry into the Automotive Lamps market.  A new entrant into the business would face costly and

lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships.

87.     Each of the Defendants also owns at least one patent for Automotive Lamps. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

88.     In addition, OEMs cannot change Automotive Lamp suppliers randomly after a supplier is initially selected because the OEMs design the features of their vehicles so that the Automotive Lamps it purchases for a vehicle are then integrated with the electronics, mechanics, thermal distribution and other features of the particular vehicle model.  Thus, the design must be synergized by the Automotive Lamps manufacturers and OEMs.  It would be difficult for a new market entrant to do so.

<b>2.      There is Inelasticity of Demand for Automotive Lamps</b>

89.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

90.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

91.     Demand for Automotive Lamps is highly inelastic because there are no close substitutes for these products.  In addition, customers must purchase Automotive Lamps as an essential part of a vehicle, even if the prices are kept at a supra-competitive level.

### 3.     Defendants had Ample Opportunities to Conspire

92.     Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy.  Members of the Automotive Lamps industry regularly hold symposiums to communicate the most recent technologies in the industry.  As one industry publication explained, "life in the world's automotive lighting industry is rather like life in a small town:  almost everyone knows what almost everyone else is doing, most of the time."

### C.     Government Investigations

93.      A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts.  A JFTC official told a leading legal publication that automotive parts supplier investigations by the JFTC, DOJ and EC would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigations being conducted by the U.S., European and Japanese antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

94.     The DOJ Antitrust Division's broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

95.     On March 13, 2012, Defendants announced that the JFTC had raided their headquarters and some branch offices on suspicion of antitrust violations.  At the time, a person familiar with the investigation stated that the authorities suspected the suppliers had, for over a decade, been fixing the prices of Automotive Lamps ahead of bidding on the RFQs issued by OEMs.  The *Nikkei* reported that the JFTC carried out raids at 20 locations, including the headquarters of each Defendant.

96.     On March 21, 2013, the JFTC handed down fines totaling $49.1 million, including a $36 million fine against Koito and a $13.1 million fine against Ichikoh for violating antitrust laws by forming a cartel to fix prices for Automotive Lamps.  On March 21, 2013 the JFTC also announced cease-and-desist orders against the violating companies, requiring them to (i) immediately pass resolutions that they would terminate any illegal conduct in the Automotive Lamps industry, (ii) contact any automobile maker who may have purchased their Automotive Lamps through collusive bidding processes,(iii) refrain from engaging in such illegal conduct in the future, and (iii) implement employee antitrust compliance programs.  According to the JFTC, fellow conspirator Stanley also violated antitrust laws, but did not receive a cease-and-desist order.

97.     The Defendants rigged the bidding process for supply contracts with automobile makers of Automotive Lamps by pre-ordaining the winners and losers.  The JFTC explained that these companies "substantially restrained competition in the fields of headlamps and rear combination lamps ordered by each automobile company, by designating successful bidders and managing to have the designated successful bidders win the bids, respectively."

98.     To illustrate the anticompetitive conduct engaged in by Defendants, Koito, Ichikoh and Stanley, the JFTC created a diagram, which is shown below:



Figure 6

99.    The JFTC also published a chart, replicated in relevant part below, illustrating when the Defendants conspired to rig-bids for RFQs issued by various automobile manufacturers.

| Automobile Companies | Starting Date of the Violation (at least as early as) | Defendant Violators |
|---|---|---|
| Nissan Motor Co., Ltd. & Nissan Shatai Co., Ltd. ("Nissan") | February 2003 | Koito, Ichikoh, Stanley |
| Toyota Motor Corp. ("Toyota") | February 2007 | Koito, Ichikoh, Stanley |
| Fuji Heavy Industries Ltd. ("Fuji") | July 2002 | Koito, Ichikoh, Stanley |
| Mitsubishi Motor Corp. ("Mitsubishi") | June 2004 | Koito, Stanley |

| Mazda Motor Corp. ("Mazda") | June 2004 | Koito, Stanley |
|---|---|---|

Figure 7

100.    Additionally, the JFTC published a second chart, replicated in relevant part below, stating the numbers of Automotive Lamps sold by Defendants Koito and Ichikoh to various automobile manufacturers at anticompetitive, artificially inflated prices.

| | Number of Automotive Lamps Ordered by Nissan | Number of Automotive Lamps Ordered by Toyota | Number of Automotive Lamps Ordered by Fuji | Number of Automotive Lamps Ordered by Mitsubishi | Number of Automotive Lamps Ordered by Mazda | Total |
|---|---|---|---|---|---|---|
| Koito | 1,380,010,000 | 271,330,000 | 806,960,000 | 222,700,000 | 747,590,000 | 3,428,590,000 |
| Ichikoh | 1,064,440,000 | 46,400,000 | 139,260,000 | (no violation) | (no violation) | 1,250,100,000 |
| Total Amt of Surcharge | 2,444,450,000 | 317,730,000 | 946,220,000 | 222,700,000 | 747,590,000 | 4,678,690,000 |

Figure 8

### D.    Guilty Pleas in Related Markets in the Automotive Industry

101.    On January 30, 2012, the DOJ announced that Yazaki Corporation ("Yazaki") had agreed to pay a $470 million fine and plead guilty to a three-count criminal information charging Yazaki with: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United states and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to certain automobile manufacturers in the United States and elsewhere, from at least as early as December 2002 until at least February

2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (3) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of fuel senders sold to certain automobile manufacturers in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

102.    In addition to Yazaki, five executives from Yazaki (all Japanese nationals) – Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa, Kazuhiko Kashimoto and Hisamitsu Takada – pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These five Yazaki executives will each pay a $20,000 criminal fine and serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

103.    On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. ("Furukawa") had agreed to plead guilty and to pay a $200 million fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses to automobile manufacturers.

104.    Three of Furukawa's executives also pleaded guilty to the same conspiracy.  The court sentenced two of the executives to 15 and 18 month prison sentences, to be served in the United States.

105.     A number of additional companies have pleaded guilty to fixing the prices of other automotive parts, including automotive wire harnesses, instrument panel clusters, fuel senders and occupant safety restraint systems.  These companies include: Fujikura Ltd., GS Electech, Inc., TRW Deutschland Holding GmbH, Autoliv, Inc., and Nippon Seiki Co., Ltd.

106.     The U.S. government has said its automotive parts cartel criminal investigation will continue and other suppliers could be charged.

107.     Sharis A. Pozen, then the Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division said there is no doubt **consumers** were hurt financially.  She further stated:  "By rigging bids . . . [automotive parts manufacturers engaged in a price-fixing conspiracy] inflated what some of their auto manufacturing clients paid, and indirectly, what consumers paid for some cars."  She also explained that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers."  Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."  Ms. Pozen went on to say that there was no doubt that United States consumers were hurt financially by the cartel's activity.  In a separate press statement, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."

108.     "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade.  The conduct had also affected commerce on a global scale in almost every market where

25

automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G.

Arena.

109.   "When companies partner to control and price fix bids or contracts, it undermines

the foundation of the United States' economic system," Arena also said.  "The FBI is committed

to aggressively pursuing any company involved in antitrust crimes."

110.   On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in

the Antitrust Division, discussed DOJ's ongoing automotive parts investigation in a Thomson

Reuters article.  He said "[t]he investigation is broader than what we've announced so far . . . .

[The investigation] is still very much ongoing, but it already appears to be the biggest criminal

antitrust investigation that we've ever encountered.  *I say biggest with respect to the <u>impact</u> on*

*U.S. businesses and <u>consumers</u>, and the number of companies and executives that are subject*

*to the investigation*."  (emphasis added).

### CLASS ACTION ALLEGATIONS

111.   Plaintiffs bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, purchased or
> leased a new vehicle in the United States for personal use and not
> for resale which included one or more Automotive Lamp(s) as a
> component part, or indirectly purchased one or more Automotive
> Lamp(s) as a replacement part, which were manufactured or sold
> by any Defendant, any current or former subsidiary of a Defendant
> or any co-conspirator of a Defendant.

112.   Plaintiffs also bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

common law of unjust enrichment and antitrust, unfair competition, and consumer protection

laws on behalf of the following class (the "Damages Class"):

All persons and entities who, during the Class Period, purchased or leased a new vehicle in the Indirect Purchaser States[1] for personal use and not for resale which included one or more Automotive Lamp(s) as a component part, or indirectly purchased one or more Automotive Lamp(s) as a replacement part, which were manufactured or sold by any Defendant, any current or former subsidiary of a Defendant or any co-conspirator of a Defendant.

113.    The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Lamps directly or for resale.

114.    While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

115.    Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Automotive Lamps sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

_____

[1] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)     Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)     Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)     The effect of the alleged conspiracy on the prices of Automotive Lamps sold in the United States during the Class Period;

(i)     Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     The appropriate class-wide measure of damages for the Damages Class.

116.     Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Automotive Lamps purchased indirectly from Defendants and/or their co-conspirators.

117.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

118.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

119.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

120.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

29

## <u>PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY</u>

121.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Automotive Lamps;

(b)    The prices of Automotive Lamps have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)    Indirect purchasers of Automotive Lamps have been deprived of free and open competition; and

(d)    Indirect purchasers of Automotive Lamps paid artificially inflated prices.

122.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Automotive Lamps.  These inflated prices have been passed on to them by OEMs and dealers.  Those overcharges have unjustly enriched Defendants

123.    The markets for Automotive Lamps and vehicles are inextricably linked and intertwined because the market for Automotive Lamps exists to serve the vehicle market. Without the vehicles, the Automotive Lamps have little to no value because they have no independent utility.  Indeed, the demand for vehicles creates the demand for Automotive Lamps. As stated in the 2010 Annual Report of Lear Corporation, an automobile parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer fleet demand for automotive vehicles."

124.    Automotive Lamps are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result, Automotive Lamps follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Automotive Lamps can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

125.    Just as Automotive Lamps can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Automotive Lamps affect prices paid by indirect purchasers of new motor vehicles containing Automotive Lamps and Automotive Lamps purchased for repair purposes.

126.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.  The OEM and dealer markets for new motor vehicles are subject to vigorous price competition.  The OEMs and dealers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Automotive Lamps lead to corresponding increases in prices for new motor vehicles and replacement parts at the OEM and dealer levels.  When downstream distribution markets are highly competitive, as they are in the case of new motor vehicles containing Automotive Lamps as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiffs and class members.

127.    Hence the inflated prices of Automotive Lamps both in new motor vehicles and those purchased for repair resulting from Defendants' bid-rigging and price-fixing conspiracy have been passed on to Plaintiffs and other class members by OEMs and dealers.

128.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law

School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule.

129.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Certification), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets.  This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

130.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Automotive Lamps and, as a direct and foreseeable result, the price of new motor vehicles containing Automotive Lamps and the price of Automotive Lamps purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Automotive Lamps on prices for new motor vehicles even though such products

32

contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of Automotive Lamps affects changes in the price of new motor vehicles. In such models, the price of Automotive Lamps would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Automotive Lamps impact the price of new motor vehicles containing Automotive Lamps while controlling for the impact of other price-determining factors.

131.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Automotive Lamps can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge passed-through the chain of distribution. Thus, the economic harm to Plaintiffs and class members can be quantified.

132.    In addition to the regression analysis discussed above demonstrating impact on consumers, the Department of Justice's Antitrust Division, which has been investigating anticompetitive conduct in the automotive parts industry for some time, **has concluded that there is "no doubt" that consumers were hurt financially**. Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division said there is no doubt **consumers** were hurt financially. "By rigging bids . . . [automotive parts manufacturers engaged in a price-fixing conspiracy] inflated what some of their auto manufacturing clients paid, and indirectly, what consumers paid for some cars," Ms. Pozen said. She also explained that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work

together to ensure that these kinds of conspiracies are stopped." Ms. Pozen went on to say that there was no doubt that United States consumers were hurt financially by the cartel's activity. In a separate press statement, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."

133. On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. *I say biggest with respect to the <u>impact</u> on U.S. businesses and <u>consumers</u>, and the number of companies and executives that are subject to the investigation*." (emphasis added).

134. By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Automotive Lamps than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover Their Claims

135. Plaintiffs repeat and re-allege the allegations set forth above.

136. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims

set forth herein, until (at the earliest) the public announcements of the government investigations into Automotive Lamps price-fixing began in March 2012.

137.    Plaintiffs and the members of the Classes are purchasers who purchased or leased automobiles or purchased Automotive Lamps to replace or repair damaged or defective Automotive Lamps in their automobiles.  They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of the government investigations began in March 2012.

138.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcements of the government investigations beginning in March 2012 that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Automotive Lamps.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

139.    For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

140.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public

announcement of the government investigations into Automotive Lamps price-fixing in March 2012.

141.    Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supracompetitive prices for Automotive Lamps throughout the United States during the Class Period.  No information, actual or constructive, was ever made available to Plaintiffs and the members of the Classes that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

142.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

143.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing.  Automotive Lamps are not exempt from antitrust regulation, and thus, before March 2012, Plaintiffs reasonably considered it to be a competitive industry.  Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Automotive Lamp prices before March 2012.

144.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

145.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no

knowledge of the alleged conspiracy, or of any facts or information that would have caused a

reasonably diligent person to investigate whether a conspiracy existed, until March 2012, when

reports of the investigations into anticompetitive conduct concerning Automotive Lamps were

first publicly disseminated.

146.    For these reasons, the statute of limitations applicable to Plaintiffs' and the

Classes' claims was tolled and did not begin to run until March 13, 2012.

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

147.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

148.    Defendants and unnamed conspirators entered into and engaged in a contract,

combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the

Sherman Act (15 U.S.C. § 1).

149.    The acts done by each of the Defendants as part of, and in furtherance of, their

contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents,

employees, or representatives while actively engaged in the management of Defendants' affairs.

150.    At least as early as July 2002, and continuing until at least the filing of this

Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators

entered into a continuing agreement, understanding and conspiracy in restraint of trade to

artificially fix, raise, stabilize, and control prices for Automotive Lamps, thereby creating

anticompetitive effects.

151.    The anticompetitive acts were intentionally directed at the United States market

for Automotive Lamps and had a substantial and foreseeable effect on interstate commerce by

raising and fixing prices for Automotive Lamps throughout the United States.

37

152.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Automotive Lamps.

153.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Automotive Lamps have been harmed by being forced to pay inflated, supracompetitive prices for Automotive Lamps.

154.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

155.    Defendants' conspiracy had the following effects, among others:

        (a)    Price competition in the market for Automotive Lamps has been restrained, suppressed, and/or eliminated in the United States;

        (b)    Prices for Automotive Lamps sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

        (c)    Plaintiffs and members of the Nationwide Class who purchased Automotive Lamps indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

156.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Automotive Lamps purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

157.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

158.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

159.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

160.    From as early as July 2002 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Automotive Lamps in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

161.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for Automotive Lamps and to allocate customers for Automotive Lamps in the United States.

162.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Automotive Lamps at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Automotive Lamps sold in the United States;

(b)    allocating customers and markets for Automotive Lamps in the United States in furtherance of their agreements; and

39

(c)     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

163.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Automotive Lamps.

164.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

165.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

166.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Automotive Lamps at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Automotive Lamps.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Automotive Lamps; and (2) Allocating among themselves the production of Automotive Lamps.

(d)     The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) Price competition in the sale of Automotive Lamps has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Automotive Lamps sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Automotive Lamps directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Automotive Lamps than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

167.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*

Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

168.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

169.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

43

Kansas; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

170.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Maine; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

171.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

172.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

173.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

46

Mississippi; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

174.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

175.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*  Accordingly, Plaintiffs

and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

176.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

177.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

49

New Mexico; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

178.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New York; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps when they purchased vehicles containing Automotive Lamps, or purchased products that were otherwise of

lower quality, than they would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

179.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

180.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

181.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

182.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

South Dakota; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

183.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

184.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Utah; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

185.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)   During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

186.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

56

West Virginia; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq*.

187.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Automotive Lamps prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

188.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiffs and members of the Damages Class have paid more for Automotive Lamps than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

189.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

190.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
Violation of State Consumer Protection Statutes
(on behalf of Plaintiffs and the Damages Class)

191.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

192.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

193.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)    During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)    The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the

59

California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to purchasers of Automotive Lamps (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Automotive Lamps (or vehicles containing them).  Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits,

compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

194.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Automotive Lamps were sold, distributed or obtained in the District of Columbia.

(b)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.

(c)    Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(d)    As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

195.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)    Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Florida; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

196.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)    Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and

open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive,

artificially inflated prices for Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected

Hawaii commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured and are threatened with further

injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and

members of the Damages Class seek all relief available under that statute.

197.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of Mass. G.L. c. 93A, § 2.

(a)    Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at

artificial and non-competitive levels, the prices at which Automotive Lamps were sold,

distributed, or obtained in Massachusetts and took efforts to conceal their agreements from

Plaintiffs and members of the Damages Class.

(c)    Defendants' unlawful conduct had the following effects:  (1) Automotive

Lamps price competition was restrained, suppressed, and eliminated throughout Massachusetts;

(2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were

deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

paid supra-competitive, artificially inflated prices for Automotive Lamps.

   (d) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

   (e) By reason of the foregoing, Defendants engaged in unfair competition and

unfair or deceptive acts or practices, in violation of G.L. c. 93A, § 2.  Defendants' and their co-

conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and

members of the Damages Class to multiple damages.

   198. Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev.

Stat. § 407.010, *et. seq.*

   (a) Plaintiffs and the Damages Class purchased Automotive Lamps for

personal, family, or household purposes.

   (b) Defendants engaged in the conduct described herein in connection with

the sale of Automotive Lamps in trade or commerce in a market that includes Missouri.

   (c) Defendants agreed to, and did in fact affect, fix, control, and/or maintain,

at artificial and non-competitive levels, the prices at which Automotive Lamps were sold,

distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was

unlawful under federal and state law, violated public policy, was unethical, oppressive and

unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

   (d) Defendants concealed, suppressed, and omitted to disclose material facts

to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and

artificially inflated prices for Automotive Lamps.  The concealed, suppressed, and omitted facts

would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Automotive Lamps they purchased.

(e)     Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(f)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(h)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

199.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*

(a)     Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Montana; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

200.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated

66

levels, the prices at which Automotive Lamps was sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Automotive Lamps as set forth in N.M.S.A., § 57-12-2E.

(c)     Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

201.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)      Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New York; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(d)      During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

(e)      During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Automotive Lamps in New York.

(f)      Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

68

202.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps was sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Automotive Lamps in North Carolina.

(f)      Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

203.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)      Plaintiffs and members of the Damages Class purchased Automotive Lamps for personal, family, or household purposes.

(b)      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps were sold, distributed, or obtained in Rhode Island.

(c)      Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Automotive Lamps. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Automotive Lamps prices were competitive and fair.

(d)      Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived

of free and open competition; and (4) Plaintiffs and members of the Damages Class paid

supracompetitive, artificially inflated prices for Automotive Lamps.

(e)     As a direct and proximate result of the Defendants' violations of law,

Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property

as a result of Defendants' use or employment of unconscionable and deceptive commercial

practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct,

as described herein.

(f)     Defendants' deception, including their omissions concerning the price of

Automotive Lamps, likely misled all purchasers acting reasonably under the circumstances to

believe that they were purchasing Automotive Lamps at prices born by a free and fair market.

Defendants' omissions constitute information important to Plaintiffs and members of the

Damages Class as they related to the cost of Automotive Lamps they purchased.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly,

Plaintiffs and members of the Damages Class seek all relief available under that statute.

204.     Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at

artificial and non-competitive levels, the prices at which Automotive Lamps were sold,

distributed, or obtained in Vermont.

(b)      Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Automotive Lamps.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Automotive Lamps prices were competitive and fair.

(c)      Defendants' unlawful conduct had the following effects:  (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps.

(d)      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)      Defendants' deception, including their omissions concerning the price of Automotive Lamps, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Automotive Lamps at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

205.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

206.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Automotive Lamps.

207.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Automotive Lamps.

208.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.


## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)      An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)      A *per se* violation of Section 1 of the Sherman Act;

(c)      An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)      Acts of unjust enrichment by Defendants as set forth herein.

C.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED:  June  6, 2013                    **THE MILLER LAW FIRM, P.C.**


By  /s/ E. Powell Miller
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison*
*Counsel for the Proposed End-Payor Plaintiffs*
*Classes*

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI**
**L.L.P**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
Elizabeth Tran
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com
etran@cpmlegal.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  June  6, 2013                    **THE MILLER LAW FIRM, P.C.**


By  /s/ E. Powell Miller
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI
L.L.P**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

1

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
Elizabeth Tran
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com
etran@cpmlegal.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes*